UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT A.,[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-00263
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Scott A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Brief*, ECF No. 17, *Plaintiff's Reply*, ECF No. 18, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.        PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 9, 2012, and November 7, 2012, respectively, alleging that he has been disabled since February 8, 2012, based on a number of physical and mental impairments. R. 209-10.[3] The applications were denied following an administrative hearing, and Plaintiff sought review in this Court of that final decision of the Commissioner of Social Security. *A[.] v. Commissioner of Soc. Sec.*, 3:16-cv-0272 (S.D. Ohio Aug. 16, 2017). Concluding that the Administrative Law Judge ("ALJ") had erred in failing to consider the opinion of Plaintiff's treating physician Thomas Brown, M.D., the Court reversed that administrative decision and remanded the matter to the Commissioner for further proceedings. *Id.* at PageID# 752; R. 772-81. Upon remand, a different ALJ, Deborah F. Sanders, held another administrative hearing on April 15, 2019. R. 690-723. Plaintiff, who was represented by counsel, testified, as did a vocational expert.[4] In a decision dated June 19, 2019, ALJ Sanders concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 8, 2012, his alleged disability onset date, through the date of that decision. R. 660-79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 28, 2020. R. 648-54. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 20. The matter is ripe for disposition.

---

[3] References to pages as they are used in the Certified Administrative Record will be cited as "R. __."
[4] ALJ Sanders first held a hearing following remand on August 20, 2018, but Plaintiff did not appear at that hearing. R. 724-37.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or

combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 44 years old at his alleged disability onset date. *See* R. 209. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from April 15, 2015, through the end of 2017, but that he had not otherwise engaged in substantial gainful activity since his alleged disability onset date of February 8, 2012. R. 662.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of his cervical and lumbar spine, mild carpal tunnel syndrome, history of coronary artery disease, polysubstance abuse disorder, and affective, anxiety, personality, and trauma-related mental disorders. R. 663.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 664.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 666. The ALJ found that this RFC permitted the performance of Plaintiff's past relevant work as a production assembler. R. 676-77.

At step five, the ALJ also found that a significant number of jobs—*i.e.*, approximately 85,000 jobs as a marker; approximately 100,000 jobs as a warehouse checker; approximately 120,000 jobs as a laundry folder—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 678. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 8, 2012, his alleged disability onset date, through the date of the decision. R. 678.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply*, ECF No. 18. Specifically, Plaintiff disagrees with the ALJ's refusal to accord controlling weight to the opinions of disability articulated by Cheng T. Pan, M.D., his treating psychiatrist, and by Thomas Brown, M.D., his treating family practitioner. *Id*. The Acting Commissioner takes the position that the ALJ's decision should be affirmed in its entirety because the ALJ correctly applied the governing legal standards and considered the entire record, and her decision is supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 17.

## IV.    DISCUSSION

Although Plaintiff's applications originally alleged that he is disabled by reason of both physical and mental impairments, he addresses in this action only the ALJ's assessment of his mental impairments—and specifically, the ALJ's evaluation of the opinions of his mental health providers. The Court therefore limits its discussion to those issues.

An ALJ must consider all medical opinions in evaluating a claimant's applications. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the controlling regulations[5] at the time Plaintiff filed his applications, the opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not accorded controlling weight, the ALJ must proffer "good reasons" for discounting the opinion of a treating physician. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Those reasons must also find substantial support in the record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Id*. However, a formulaic recitation of factors is not necessary. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

As is relevant here, when an ALJ does not assign controlling weight to the opinions of the claimant's treating providers, the ALJ must explain the weight assigned to the opinions of all medical sources. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In doing so, the ALJ is required to apply the following factors: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of

---

[5] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, *inter alia*, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Because Plaintiff's applications in this case were filed prior to that effective date of March 27, 2017, the treating physician rule applies to his claims.

the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

  A. **The Opinion of Treating Psychiatrist Dr. Pan**

Dr. Pan began his treatment of Plaintiff in 2010. *See* R. 361. Office notes generated during Plaintiff's alleged period of disability include findings of fair appearance, normal demeanor, goal directed thought processes, "partial" or "fair" insight and judgment, and slight or "fair" depression. R. 399. Medication was continued and Plaintiff was encouraged to maintain sobriety. R. 400 (March 2012), 401 (September 2012). Dr. Pan's February 2013 notes indicate that Plaintiff's condition was "stable. No depression or psychosis noted." R. 483. Notes from a May 2013 office visit reflect a flat appearance, goal directed thought process, and depressed mood. R. 520. In June 2013, Plaintiff was seen for crisis assessment. R. 514. His medication was changed and he expressed a willingness to begin counseling. R. 516. In August 2013, Dr. Pan noted that Plaintiff's appearance was flat and his demeanor was slow. R. 501. His mood and affect were "[f]air" and insight and judgment were "[p]oor." *Id*. However, his condition remained "stable" and "[n]o significant depression or psychosis was noted." R. 502. In February 2014, Dr. Pan noted that Plaintiff was cooperative but unkempt and withdrawn. R. 577. His thought processes were normal, he manifested no abnormal or psychotic thoughts, had normal attention and concentration, and his mood was anxious, depressed, and dysphoric. R. 577-79. His GAF was placed at 35. R. 581.[6] Dr. Pan's office notes from May 2014 reflected normal thought

---

[6] The Global Assessment of Function, or GAF, reflects a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*, . . . avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id*. A GAF score of 61-70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia" or "some difficulty in social, occupational, or school functioning. . . but generally functioning pretty well)." *Id*. A GAF score of 71-80

processes, no abnormal psychotic thoughts, issues with working memory, normal attention and concentration, and anxious and dysphoric mood and affect. R. 559-60. In August 2014, Plaintiff's though processes were normal; no hallucinations were noted. R. 549-50. There were issues with recent memory but no issues with attention and concentration. R. 551. His mood and affect were anxious, depressed and dysphoric. *Id*. His GAF was 35. R. 553. In November 2014, Dr. Pan noted normal thought processes, R. 536, but auditory hallucinations and paranoid delusions. R. 537. Plaintiff had normal attention and concentration, but his mood was anxious, depressed, and dysphoric. R. 538. His GAF remained 35. R. 540. In his February 2015 office notes, Dr. Pan indicated that Plaintiff had denied side effects from medication, was sleeping well, and his mood was "stable for the most part. NO delusions or paranoia noted" [sic]. R. 615. On clinical examination, Dr. Pan noted that Plaintiff was cooperative but was unkempt, had limited eye contact, was withdrawn and pre-occupied, and had psychomotor retardation. R. 617. He did not suffer from hallucinations or delusions, was not suicidal or homicidal, and had normal attention and concentration. R. 618-19. No impairment of memory was noted; Plaintiff's attention and concentration were normal. R. 619. His mood and affect were depressed, constricted and blunted. *Id*. Plaintiff's GAF was again 35. R. 621.

Dr. Pan completed a "Mental Impairment Questionnaire" on February 11, 2015. R. 602-14. The psychiatrist diagnosed post-traumatic stress disorder and bipolar disorder, nos. R. 602. According to Dr. Pan, Plaintiff had "marked" or "extreme" functional limitations in several areas

---

indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *Id*. A GAF score represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 F. App'x 191, 194 n.2 (6th Cir. 2003). The Commissioner "has declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation on the severity requirements of the mental disorders listing." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (cleaned up).

as they pertained to mental functioning. *Id*. Specifically, Dr. Pan opined that Plaintiff had "extreme" limitations in his ability to, *inter alia*, understand and remember detailed instructions; carry out very detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision, complete a normal workday and work week; and accept instructions and respond appropriately to criticism from supervisors. R. 604. Dr. Pan indicated that Plaintiff had "marked" limitations in his ability to engage in most other work-related activities. R. 604-05. Dr. Pan placed Plaintiff's GAF at 55, R. 602, which is indicative of moderate impairment of function. In describing the clinical findings that support these opinions, Dr. Pan wrote: "Pt is extremely passive, avoidant & helpless[.] He isolates self and is withdrawn[.] He has poor motivation & energy." R. 603. According to Dr. Pan, Plaintiff had responded "partially" to treatment. His prognosis was "poor." *Id*. Plaintiff's impairments would cause him to be absent from work more than three times per month. R. 604. On that same date, Dr. Pan also responded to written interrogatories in which he checked the response "NO" in connection with Plaintiff's ability to engage in work-related activities from a mental perspective. R. 606-14. In explaining those responses, Dr. Pan wrote merely "Due to mental illness." *Id*.

   ALJ Sanders assigned "little weight" to Dr. Pan's opinions. R. 673. In doing so, the ALJ correctly noted the applicable standard for evaluating the opinions of a treating provider and summarized in extensive and thorough fashion the administrative record. R. 660-79. The ALJ went on to reason:

> I give little weight to his assessments and do not give them controlling or deferential weight, because they are unsupported by objective signs and findings in the preponderance of the record, including the objective findings in the [treating agency's] progress notes. As discussed above, Dr. Pan's progress notes

10

>show some depressed and/or anxious moods, a flat or constricted affect, some preoccupied or negative behavior, slowed activity, some decreased memory, and some poor insight and judgment. However, Dr. Pan documented a fair mood and affect, fair to normal demeanor and activity, and fair insight and judgment on several other occasions. Further, Dr. Pan consistently documented normal speech, goal-directed thought processes, normal attention and concentration, intact abstraction abilities, and full orientation. As discussed above, the claimant inconsistently reported hallucinations and generally denied them, as well as delusions, paranoia, and suicidal ideation. He was working in 2011, and just after Dr. Pan's assessment, he began working fulltime in April 15, 2015, and continued to do so through at least the end of 2017. Moreover, he testified at the hearing that he is now working part-time. Progress notes generally show similar findings during periods that the claimant did not work and periods that he did work, except for when he engaged in substantial polysubstance abuse. On the evaluation form, Dr. Pan referred to a current GAF score, as well as a GAF score in the past year, of 55, and while I give little weight to the GAF scores in general, as noted below, a score of 55 generally indicates only moderate symptoms. Lastly, while Dr. Pan checked off various aspects of the attorney's form, there was no room for nuance in the "yes or no" questions. Further he did not provide any detailed explanation for such serous findings. He cursorily cited "mental illness" a few times but provided no reference to specific symptoms or why they would cause such blanket dysfunction that would support the variance from his own treatment notes. For all of these reasons, I give little weight to Dr. Pan's findings of marked to extreme impairment.

R. 673 (citations to record omitted).

An ALJ is justified in declining to give controlling weight to a treating physician if that physician's opinion is inconsistent with his own medical records. *Driggs v. Comm'r of Soc. Sec.*, No. 2:11-cv-0229, 2011 WL 5999036, at *6 (S.D. Ohio Nov. 29, 2011). Here, there was substantial evidence in the record to support the ALJ's decision to accord little weight to Dr. Pan's opinion. It is true that, as Plaintiff points out, the record also includes evidence that would support the opposite conclusion. However, as stated above, an ALJ's decision is entitled to considerable deference on appellate review. *See Blakley*, 581 F.3d at 406. This is so even if substantial evidence exists in the record to support a different outcome. *Emard*, 953 F.3d at 849.

Plaintiff argues that the ALJ committed reversible error in criticizing Dr. Pan for using "yes or no" questionnaires with no "room for nuance." *Plaintiff's Statement of Errors*, ECF No.

11

12, PageID# 2451. However, the ALJ's comments in this regard constituted merely one of many factors relied upon by the ALJ in her assessment of Dr. Pan's opinions; they do not amount to reversible error.

Plaintiff also argues that the ALJ erred in referring to Dr. Pan's February 2015 GAF score of 55, but not to the other, more restricted, GAF scores reflected in Dr. Pan's treatment records. *Plaintiff's Statement of Errors*, ECF No. 12, Page ID 2451. However, the ALJ expressly indicated that she assigned little weight to the GAF scores generally, and noted the score only as inconsistent with Dr. Pan's opinions of extreme impairment of function. R. 673. The ALJ's comments in this regard do not amount to reversible error.

In short, the Court concludes that the ALJ's assessment of Dr. Pan's opinions conformed to applicable regulations and enjoy substantial support in the record.

### B. The Opinion of Treating Family Physician Dr. Brown

The ALJ also accorded "little weight" to the opinions of Dr. Brown, Plaintiff's treating family physician. R. 674. Plaintiff argues that the ALJ committed reversible error in doing so. This Court disagrees.

Thomas Brown, M.D., has treated Plaintiff for, *inter alia*, fatigue, hypothyroidism, and coronary artery disease for more than ten years. *See* R. 451, 453, 454, 593. Office notes include complaints of, *inter alia*, depression and sadness. R. 450, 454. In January 2013, Plaintiff reported difficulty concentrating and suicidal thoughts; Dr. Brown diagnosed schizoaffective disorder, chronic, and depression, and commented, "Has degenerated to the point where he is unemployable." R. 454-55. *See also* 458 (February 2013 diagnosis of schizoaffective disorder). In February 2013, Dr. Brown signed a prescription form stating, "Patient with schizophrenia. Permanently disabled and under my care." R. 476. In a February 2014 evaluation for disability,

12

Dr. Brown commented that Plaintiff's severe and chronic schizoaffective disorder is manifested by disordered thoughts and hallucinations. R. 526. Plaintiff's affect and demeanor were depressed, flat, and paranoid; his cognitive functioning was diminished. R. 527. That same month, Dr. Brown again wrote (apparently in response to a request made in connection with Plaintiff's disability claim), "Patient with schizophrenia. Permanently disabled and under my care." R. 529.

In February 2014, Dr. Brown completed an assessment of Plaintiff's ability to do work-related activities, R. 588-92, and opined that Plaintiff's ability to engage in physical activities is reduced as a result of "schizophrenia." R. 590-91. *See also* R. 591 ("Schizophrenia w/ paranoia – poor interactions w/ others.") Dr. Brown also answered written interrogatories, R. 593-601, in which he opined that, as a result of his schizophrenia, Plaintiff would not be able to: be prompt and regular in attendance; respond appropriately to supervision, co-workers and customary work pressures; withstand the pressure of meeting normal standards of productivity and accuracy without significant risk of physical or psychological decompensation or worsening of his physical and mental impairments; sustain attention and concentration on his work to meet normal standards of work productivity and accuracy; understand, remember, and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; maintain concentration and attention for two-hour segments; relate predictably in social situations; complete a normal workday and work week; and demonstrate reliability; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal work day and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; respond appropriately to changes in a routine

work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain ordinary routine without special supervision; work in coordination with, or in proximity to, others without being unduly distracted by them; and accept instructions and respond appropriately to criticism from supervisors. R. 595-601. According to Dr. Brown, Plaintiff had "marked" restrictions in his activities of daily living, difficulties in maintaining social functioning, and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. R. 601.

> As noted above, the ALJ accorded "little weight" to Dr. Brown's opinions:

> Although Dr. Brown had been seeing the claimant for over 10 years at the time of the assessment, he was a family physician and unqualified to offer an opinion on the claimant's level of mental functioning. Although Dr. Brown's name is mentioned in the record, it does not appear that he has provided significant ongoing treatment to the claimant since his assessments. Further, at the time, Dr. Brown had seen the claimant on only approximately seven occasions in the three years since the allege disability onset date, and the February 2014 note was apparently written in response to the claimant's request to Dr. Brown that he "write a letter for disability to Job and Family Services stating that [he was] unable to work due to his diagnosis". Moreover, Dr. Brown's opinion, and the findings documented in his progress notes, appear to be based primarily on the claimant's subjective complaints. However, as explained throughout this decision good reasons exist for questioning the consistency of the claimant's subjective complaints. Notably, Dr. Brown attributed the limitations to schizophrenia, but as discussed above, Dr. Pan made no such diagnosis. Further, he reported significantly more severe symptoms to Dr. Brown, including regular complaints of hallucinations and suicidal ideation, yet with just a few exceptions the claimant consistently denied such symptoms during visits with Dr. Pan. These inconsistencies do not reflect favorably on the consistency of the claimant's allegations to Dr. Brown, which warrants less weight to Dr. Brown's opinion regarding the claimant's condition. The totality of the medical evidence clearly supports that the claimant is not as severely limited as assessed by this doctor.

R. 674-75 (citations to record omitted).

As noted above, an ALJ must give controlling weight to the opinion of a treating provider if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). This Court concludes that ALJ Sanders provided "good reasons" for declining to accord controlling weight to Dr. Brown's opinion. *See Gayheart*, 710 F.3d at 376.

The ALJ noted that Dr. Brown offered little support for his diagnosis of schizophrenia and his opinions of impairment. The ALJ also properly noted that this family practitioner diagnosed schizophrenia, a diagnosis that was inconsistent with the treating psychiatrist's diagnoses of post-traumatic stress disorder and bipolar disorder. R. 674. Under these circumstances, the ALJ's failure to accord controlling weight to Dr. Brown's opinions enjoys substantial support in the record.

The ALJ also properly evaluated Dr. Brown's opinions by reference to the factors required by the applicable regulation. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Although Plaintiff complains that the ALJ erred in discounting Dr. Brown's opinions because he is not a mental health specialist, *Plaintiff 's Statement of Errors*, ECF No. 12, PageID# 2453, the regulations expressly require an ALJ to take the provider's area of specialization into account when considering such opinions. 20 C.F.R. §§ 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); 416.927(c)(5) (same).

In short, the ALJ's evaluation of Dr. Brown's opinions complied with the applicable regulations and her findings and conclusions are supported by substantial evidence. This Court must therefore defer to her decision, regardless of whether there is evidence in the record that could have supported an opposite conclusion. *See Longforth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

V.     CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 12, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  July 18, 2022                             *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE